# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:20-CR-20120-TLP |
| ) | |
| **KRISTOPHER HARRIS,** ) | |
| Defendant. ) | |

## RESPONSE TO MOTION TO SUPPRESS
## PHOTOSPREAD IDENTIFICATION OF DEFENDANT

The United States respectfully submits this response in opposition to the Motion to Suppress Photospread Identification of Defendant (Doc. 41), and states as follows:

### FACTS

On July 17, 2019, the victim, Mr. Stephenson, was carjacked by the Defendants in this matter while seated inside his vehicle at the Pump and Munch gas station, located at 6456 E. Shelby Drive in Memphis, TN. Defendant got out of a tan Jeep SUV with at least two other passengers in the vehicle, and pointed a semi-automatic handgun at the victim, firing one shot into the front passenger-side window of the victim's vehicle. The victim jumped from the vehicle and fled into the store. After the victim fled, his car was stolen and driven away by one of the persons in the Jeep with Defendant Harris.

An investigation of the carjacking was assigned to Detective David Hallum. That investigation revealed Defendant Harris as a person suspected to have been involved in the incident. In conjunction with his investigation, Detective Hallum created a photo array which included a photo of Defendant Harris. The victim was asked to review the array and made the identification that is the subject of this motion on August 14, 2019. (*See*, Exhibit 1, Photo Array).

If called to testify regarding the photo array in question, the United States anticipates that Detective Hallum would testify as follows. On August 14, 2019, Detective Hallum asked the victim if he could come by the detective's office to review photo lineups that had been created as a part of the investigation. The victim agreed to come by and was presented with the photo lineup advice form for review. After the victim reviewed the form, the six person photo lineup labeled "C" which included Defendant Harris in position 1 was presented to the victim. After a few seconds of review, the victim pointed to the picture of Defendant Harris. Detective Hallum asked who the victim thought that Defendant Harris was; the victim responded that Defendant Harris was the person that shot at him. The victim then circled picture 1 and initialed the circle, writing at the bottom of the lineup that "this is the carjacker that shot in my car."

Detective Hallum then showed the victim photo array D which contained another person who had been suggested by the defendants to have been present; the witness was unable to identify anyone from photo array D.

## LAW

An eyewitness identification of a defendant may be excluded from evidence on due process grounds only if the identification procedure conducted by law enforcement officials was unduly suggestive and therefore, considering the totality of the circumstances, created a substantial likelihood of misidentification. *Perry v. New Hampshire*, 565 U.S. 228, 239-40 (2012).

> An identification infected by improper police influence, our case law holds, is not automatically excluded. Instead, the trial judge must screen the evidence for reliability pretrial. If there is "a very substantial likelihood of irreparable misidentification," *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed 2d 1247 (1968), the judge must disallow presentation of the evidence at trial. But if the indicia of reliability are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances, the identification evidence ordinarily will be admitted, and the jury will ultimately determine its worth.

*Id.* at 231. The Sixth Circuit has set forth a two-step analysis for determining the admissibility of

eyewitness identification evidence such as a photographic array. First, a defendant bears the burden of proving that the identification procedure was impermissibly suggestive. *Howard v. Bouchard*, 405 F.3d 459, 469-75, 479-85 (6th Cir. 2005). The defendant must show not only that the challenged identification procedure was suggestive, but that it was "impermissibly" or "unduly" or "unnecessarily" suggestive. *Id.* at 469. Second, even if the defendant meets that burden, an identification is still admissible if the totality of the circumstances indicates that it is reliable. *Neil v. Biggers*, 409 U.S. 188, 196-97 (1972); *United States v. Meyer*, 359 F.3d 820, 824 (6th Cir. 2004). "A defendant is denied due process 'only when the identification evidence is so unreliable that its introduction renders a trial unfair.'" *Meyer*, 359 F.3d at 824 (quoting *Smith v. Perini*, 723 F.2d 478, 482 (6th Cir. 1983)). "As long as there is not a substantial likelihood of misidentification, it is the function of the jury to determine the ultimate weight to be given to the identification." *Id.* (quoting *Smith*, 723 F.2d at 482).

A defendant seeking to exclude the admission of an eyewitness identification thus faces a stiff burden. Courts generally "withhold identification evidence from the jury only in 'extraordinary circumstances.'" *United States v. Lebron-Cepeda*, 324 F.3d 52, 59 (1st Cir. 2003).

**ANALYSIS**

**I.   The identification procedure used in this case was not unduly suggestive.**

The procedure used by Detective Hallum was proper and involved written advice as to how to conduct the identification. The defendant's sole allegation of an unduly suggestive procedure used by law enforcement is a claim that Defendant Harris's eye color is a different shade from the eye color of the other five individuals in the photo array. This argument is insufficient to satisfy the defendant's burden in this case.

    A.   <u>The eye color of the persons in the photo array is not distinguishable.</u>

A review of the photo array shows six men of similar height, build, features, and facial hair; their eye color is virtually indistinguishable. A minor, at most, variation in eye color should not lead a court to conclude that the photo array is unduly suggestive. In fact, nothing in the photo is impermissibly suggestive as to the defendant. *See United States v. Burnett*, 773 F.3d 122 (3d Cir. 2014) ("A photographic array is not unnecessarily suggestive solely because certain characteristics of a defendant or photograph set him apart from the other persons pictured in the array.") (citing *Reese v. Fulcomer*, 946 F. 2d. 247, 260 (3d Cir. 1991)).

A case directly to the point is *United States v. Sullivan*. 431 F.3d 976 (6th Cir. 2005). In *Sullivan*, the defendant's argument was that "his picture was emphasized in the photographic array in that he was the only suspect in lineup with noticeably blue eyes and a majority of the witnesses described the robber as having blue eyes." *Id.* at 985. The magistrate judge in *Sullivan* disagreed after a review of "the quality of the photographs and at the characteristics of the individuals in them" and stated that "'the eye color is not easily ascertained by looking at either array'". *Id.* The *Sullivan* court ultimately held that the defendant failed to carry his burden to show that the identification was made as a result of an unduly suggestive process; this Court should come to the same conclusion.

Defendant Harris has therefore failed to satisfy his burden of demonstrating that the photo array was unduly suggestive.

**II.     The identification was sufficiently reliable to be admitted into evidence.**

Even if the witness's identification of the defendant from the photo array was the product of an unduly suggestive procedure (which it was not), it is still admissible because it was reliable and there was no substantial likelihood of misidentification. *See Meyer*, 359 F. 3d 824. In determining the reliability of an eyewitness identification, five factors must be weighed: 1) the opportunity of

4

the witness to view the perpetrator during the crime; 2) the witness's degree of attention to the perpetrator; 4) the level of certainty demonstrated by the witness when identifying the suspect; and 5) the length of time between the crime and the identification. *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2013) (citing *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)).

Each factor weighs in favor of reliability here. First, the victim had the opportunity to view the defendant from a relatively short distance in an area that was well-lit. *See Williams v. Baughman*, 759 F.3d 630, 639 (6th Cir. 2014) (identification reliable where witness was only 20 feet away from the suspect "and was able to look him full in the face"). The United States expects that the victim will testify that he made eye contact with Defendant Harris before he got out of the Jeep and had the opportunity to see Defendant Harris as he shot a weapon into his car from only a few feet away. In short, he had an excellent opportunity to view the defendant.

Second, the victim was paying close attention to the defendant when he saw him. He was being told to get out of his vehicle by a man only a few feet away from him with a gun whom he had already made eye contact with. Courts "find more reliability where a witness was able to view the assailant with a heightened degree of attention, as compared with disinterested bystanders or casual observers and "place greater trust in witness identification made during the commission of a crime because the witness has a reason to pay attention to the perpetrator." *Howard v. Bouchard,* 405 F.3d 459, 473 (6th Cir. 2005) (citations and quotation marks omitted). Here, the victim was in fear for his life and was acutely aware that a crime was being committed against him.

Third, the description that the witness gave of the defendant closely matched the way the defendant looked at the time of the carjacking. *See Jells v. Mitchell,* 538 F.3d 478, 513 (6th Cir. 2008) (identification reliable where witness accurately described defendant's hairstyle). The victim was able to describe the Defendant as a black male, light skinned, average height, around

5

his mid-twenties, with a bald low cut fade, a thin build, and armed with a black handgun. The victim was positive that he could identify the shooter if he saw him again. The description given by the victim were accurate and thus reliable.

Fourth, the victim showed a high level of certainty in his identification. He picked the defendant from the array almost immediately and identified him as the shooter. *See Keene v. Mitchell*, 525 F.3d 461, 466 (6th Cir. 2008) (identification reliable where witness displayed a high degree of certainty at pretrial identification.)

Fifth, the witness's identification of the defendant took place only 28 days after the crime. *United States v. Causey*, 834 F.2d 1277, 1286 (6th Cir. 1987) ("A three to four-month delay between the crime and the identification does not render the identification inherently unreliable."). All five factors counsel in favor of finding the witness's identification reliable.

Moreover, in determining whether an eyewitness identification is reliable enough to be presented to a jury, courts also consider other independent evidence against the defendant. *See, e.g.*, *Keene*, 525 F.3d at 466 (other evidence, including defendant's statements and possession of victim's car, showed the victim's identification reliable); *Haliym v. Mitchell*, 492 F.3d 680, 706 (6th Cir. 2007) (reliability is judged under totality of the circumstances); *Kennaugh v. Miller*, 289 F.3d 36, 48 (2d Cir. 2002) (eyewitness identification reliable because other evidence of guilt strong); *United States v. Rogers*, 73 F.3d 774, 778 (8th Cir. 1996) (identification reliable because at least two other witnesses identified defendant); *Gilday v. Callahan*, 59 F.3d 257, 270 (1st Cir. 1995) (identification reliable despite weakness in identification testimony because defendant admitted to buying crime weapon and car, stealing license plate, and taking proceeds of robbery).

In this case, there was plenty of other evidence showing that the witness's identification of the defendant was reliable. For example, there is overwhelming evidence that the defendant was one of the men in the Jeep. The defendant and one of the others involved in the carjacking admit that Defendant Harris was in the Jeep the night of the carjacking. Under the totality of the circumstances, and considering this additional evidence, the photo identification should be deemed reliable in this case.

## CONCLUSION

An eyewitness's identification may only be excluded from evidence when it is the result of an identification procedure "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Meyer*, 359 F.3d at 824 (quotation omitted). "A defendant is denied due process 'only when the identification is so unreliable that its introduction renders a trial unfair.'" *Id.* at 825 (quoting *Summitt v. Bordenkircher*, 608 F.2d 247, 253 (6th Cir. 1979). "As long as there is not a substantial likelihood of misidentification, it is the function of the jury to determine the ultimate weight to be given to the identification." *Id.* at 824.

The witness's identification of the defendant was a reliable one and should be submitted to the jury in this case. The defendant's motion to suppress should be denied.

Respectfully Submitted,

D. MICHAEL DUNAVANT
United States Attorney

By:  s/ Wendy K. Cornejo
     WENDY K. CORNEJO (IL#6281679)
     Assistant United States Attorney
     167 North Main, Suite 800
     Memphis, Tennessee 38103
     Telephone:    (901) 969-0303
     Email:         wendy.cornejo@usdoj.gov

**CERTIFICATE OF SERVICE**

I, Wendy K. Cornejo, Assistant United States Attorney for the Western District of Tennessee, hereby certify that a copy of the foregoing response was filed by electronic means via the court's electronic case filing system.

This 28th Day of October, 2020.

By:  s/ Wendy K. Cornejo
     WENDY K. CORNEJO (IL#6281679)
     Assistant United States Attorney